UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60976-Civ-SCOLA

GRAIL SEMICONDUCTOR, INC.,

    Plaintiff,
vs.

ROBERT B. STERN,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

THIS MATTER is before the Court upon the Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 20], filed by Defendant Robert B. Stern ("Stern"). Stern seeks dismissal of the entire case for lack of personal jurisdiction or, alternatively, dismissal of pendent state law claims for lack of subject matter jurisdiction. For the reasons explained below, the Motion to Dismiss is denied as to the issue of personal jurisdiction, but granted in part as to the issue of supplemental jurisdiction.

## Introduction

This lawsuit arises from Stern's attempts to transfer or sell restricted stock shares in Grail Semiconductor, Inc. ("Grail") to third-parties. Grail filed suit alleging that Stern's attempted sales and/or transfers violated the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* The Complaint also raises pendent state law claims. According to the Complaint, there were 44 unlawful transactions, or attempted transactions, involving the transfer of restricted stock shares to "persons located in Florida, California and New York, as well as persons in both Canada and Israel." Compl. ¶ 17. As to Florida, there was just a single transaction in which Stern allegedly gifted 4,500 shares to a South Florida resident named Howard Moskow. The remaining 10 million shares at issue involved transactions outside of, and unrelated to, Florida.

There is conflicting evidence as to whether Stern's long-time business acquaintance, David Rothschild, also solicited two Florida residents to buy Stern's shares. According to Rothschild, Stern asked him to seek out interested persons in September 2009 and, as a result, he "forwarded the then current Grail business plan to two Florida residents, Aaron Dukes of Coral Springs, Florida, someone well known to [Stern], and Stuart Schulman of Boca Raton, Florida." Rothschild Decl. ¶ 5. Stern contends, however, that he asked Rothschild to assist with finding "potential investors in Grail Semiconductor, Inc. in an effort to raise capital to pay off Grail Semiconductor Inc.'s liabilities," and that "[t]here was never any discussion between [Stern] and Rothschild that any potential investors were residents or situated in Florida." Stern Decl. ¶¶ 10-11. Stern also states that he never gave Rothschild any authority to solicit, or offer for sale, any of his Grail shares. *Id.* ¶ 12. Nor, according to Stern, did he ever solicit, offer, transfer, or sell any of his shares to the two Florida residents at issue, Aaron Dukes or Stuart Schulman. *Id.* ¶ 14.

Stern, former CEO of Grail, is a California citizen and resident. Grail is a California corporation founded in 2000. Since 2010, Grail has kept its principal place of business in Naples, Florida. Stern has limited contacts with Florida. In fact, he has never lived in the State, nor owned property here. He also has never been employed in Florida.

Given his limited contacts with Florida, Stern seeks dismissal for lack of personal jurisdiction. According to Stern, Florida's Long-Arm Statute does not confer general or specific personal jurisdiction and he does not have sufficient minimum contacts with the forum, as required by the Due Process Clause of the Fourteenth Amendment. Stern also argues that Grail's pendent state law claims should be dismissed for lack of supplemental jurisdiction because they do not arise from the same set of facts as Grail's federal law claims.

Grail responds that there is specific jurisdiction under Florida's Long-Arm Statute because Stern allegedly committed a tort in Florida. Grail also contends that Stern's connections with Florida satisfy the Due Process Clause. As to the state law claims, Grail argues they are sufficiently connected to the federal claims and, as such, should not be dismissed.

## Legal Standards

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24

(M.D. Fla. 2011) (Hernandez Covington, J.).  To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person.  *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010).  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).  The plaintiff must do more than "merely reiterate the factual allegations in the complaint."  *Id.* (citation omitted).  Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff.  *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).  "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."  *Id.*

### B. Supplemental Jurisdiction

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1).  Federal subject matter jurisdiction is typically found only where a case involves a question of federal law or diversity of citizenship between the parties.  *See Chen v. Cayman Arts, Inc.*, 2011 WL 744657, at *2 (S.D. Fla. Feb. 11, 2011) (Cohn, J.); *see also* 28 U.S.C. §§ 1331-1332. "When a case involves additional claims forming part of the same case or controversy as those over which there is original jurisdiction, the court may assert supplemental jurisdiction over the additional claims."  *Chen*, 2011 WL 744657, at *2; *see also* 28 U.S.C. § 1367(a).

The district court's supplemental jurisdiction reaches "to the full extent allowed by the 'case or controversy' standard of Article III."  *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994).  The relevant inquiry is whether the pendent state law claims "arise out of a common nucleus of operative fact" as the "substantial federal claim" supplying jurisdiction.  *See Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724-25 (1966).  "A federal court's power or jurisdiction to entertain supplemental state claims is ordinarily determined on the pleadings."  *Lucero*, 121 F.3d at 598.

## Legal Analysis

### A. Personal Jurisdiction

In the typical case, "[w]hether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court determines whether, consistent with state law, the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249; *see also see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court considers "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *See Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

Both parties devote substantial argument to whether there is personal jurisdiction under Florida's Long-Arm Statute on the assumption that the above framework automatically applies here. As previously noted, however, this case is here on federal question jurisdiction; Grail has sued under the federal securities laws, specifically the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq. See Koch v. Royal Wine Merchants*, 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012) (Hurley, J.) ("Inexplicably, the parties in this case limited their discussion of personal jurisdiction to the traditional analysis applied to a state's long-arm statute and the Fourteenth Amendment's requirement of 'minimum contacts.' Both parties ignored the [federal law] claim's impact on personal jurisdiction.").

"When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Because these federal securities laws provide for worldwide service of process, the applicable forum for personal jurisdiction purposes is the United States as a whole, not Florida. *See S.E.C. v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997); *see also ATO RAM II, Ltd. v. SMC Multi. Corp.*, 2004 WL 744792, at *2 (S.D.N.Y. Apr. 4, 2004) (Baer, J.).

In this analysis, the Fifth Amendment's Due Process Clause serves as the constitutional touchstone because "when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." *BCCI Holdings*, 119 F.3d at 942. The Eleventh Circuit has made clear that "a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis,"

as "[t]here is nothing inherently burdensome about crossing a state line." *Id.* at 946. "A court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis." *Id.* at 946-47.

Yet, minimum contacts with the Nation as a whole will not automatically satisfy the requirements of the Fifth Amendment in all cases. *See id.* at 947. "There are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *See id.* The Eleventh Circuit has cautioned, though, "it is only in ***highly unusual cases*** that inconvenience will rise to a level of constitutional concern." *See id.* (emphasis added). In most cases, "[m]odern means of communication and transportation" will lessen "the burden of defending a lawsuit in a distant forum." *See id.* at 947-48 (citations omitted). "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." *See id.* at 948 (citations and alternations omitted).

"When a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *See id.* Consideration of "the federal interest" requires an examination of "the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy." *See id.* If the defendant fails to demonstrate "any constitutionally significant inconvenience," however, the Court "need not balance the federal interests at stake in [the] lawsuit." *See id.*

Turning to the facts of this case, the Court finds that Stern has sufficient minimum contacts with the United States as a whole. Stern's contacts with this forum are clearly related to the plaintiff's causes of action and evidence purposeful availment. He is a California resident and the allegations concern his voluntary transfer of restricted stock shares to persons residing mostly in the United States. Compl. ¶¶ 12-24, 40-46. Indeed, of the 44 transactions that provide the basis for Grail's securities laws claims, all but 10 of them allegedly involve transfers, or attempted transfers, to persons within the United States. *See* Attachment to Stern's Email of 11/2/2011. As such, Stern's contacts with the forum are also such that he should reasonably anticipate being haled into court in the United States.

Having found sufficient minimum contacts, the Court must now consider whether an exercise of jurisdiction would offend traditional notions of fair play and substantial justice. The focus here is on inconvenience and burden to the defendant. As noted above, it is only in the rare case that the degree of "inconvenience will rise to a level of constitutional concern." *See BCCI Holdings*, 119 F.3d at 947. Because the defendant bears the burden "to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent," we must consider whether Stern has come forward with anything to substantiate such an unconstitutional burden. *See id.* at 948.

He has not. The only evidence of burden whatsoever is Stern's statement, in his affidavit, that "[i]t would be extremely difficult for [him] to litigate in the State of Florida" because he "reside[s] in California and [has] no business or personal dealings in Florida." Stern Aff. ¶ 13. These statements are essentially mere conclusions; they do not furnish the Court with anything substantive that would show why or how the burden on Stern would be of constitutional concern. As this Court has noted before, "generalized inconvenience of litigating in a foreign forum is typically not sufficient to establish that the exercise of jurisdiction is constitutionally unreasonable." *See H.E.R.O., Inc. v. Self*, 2012 WL 1802431, at *6 (S.D. Fla. May 17, 2012) (Scola, J.) (citation omitted). Moreover, the burdens of defending suit in another state have been largely ameliorated by modern technology and travel conveniences. *Sculptchair*, 94 F.3d at 632.

As this discussion makes clear, Stern has not carried his burden to demonstrate "any constitutionally significant inconvenience." *See BCCI Holdings*, 119 F.3d at 948; *Koch Wine Merchants*, 847 F. Supp. 2d at 1375. Therefore, the analysis is done and the Court "need not balance the federal interests at stake in [the] lawsuit." *See BCCI Holdings*, 119 F.3d at 948. Asserting jurisdiction over Stern does not offend constitutional notions of fair play and substantial justice.[1]

---

[1] In finding personal jurisdiction over Stern, the Court expresses no opinion on whether this case is properly venued in this District. Such a determination should be made, if at all, upon proper motion from the defendant under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" "Section 1404(a) is the statutory codification of the common law doctrine of forum non conveniens." *Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1350 (M.D. Fla. 1999) (Kovachevich, J.). The Supreme Court has remarked that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to individualized, case-by-case consideration of convenience and fairness." *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

### B. Supplemental Jurisdiction

The Court finds that Count IV (Accounting), Count V (Sums Due Under the Terms of the Note), and Count VI (Un-Reimbursable Expense Advances) must be dismissed for lack of jurisdiction under 28 U.S.C. § 1367(a). Count III (Breach of Fiduciary Duty) shall remain in the case, however.

As stated above, the Court may exercise subject matter jurisdiction over pendent state law claims only if they stem from the same nucleus of facts as the federal claims. *See Lucero*, 121 F.3d at 597; *Gibbs*, 383 U.S. at 724-25. Grail's federal claims concern Stern's alleged 44 transfers, or attempted transfers, of restricted stock shares in or around 2011. The state law breach of fiduciary duty claim in Count III also pertains to those transactions. Indeed, Count III arises from the same nucleus of operative facts as the federal claims. Thus, there is supplemental jurisdiction over Count III.

By contrast, the pendent state law claims in Counts IV, V, and VI have nothing to do with Stern's allegedly unlawful stock transfers. Instead, those claims are directed to Stern's failure to pay back a promissory note dating to 2000, his taking of improper advances for non-reimbursable expenses in 2008 and 2010, and his general use (or misuse) of corporate funds and corporate opportunities as a director of Grail. Grail nevertheless contends that supplemental jurisdiction exists because Stern's "thirst for money" led him to peddle his restricted stock shares and "also caused him to fail to repay a corporate loan (Count V) and to withdraw corporate funds for personal expenses which he failed to reimburse to the company (Count VI)." Resp. at 12. This line of argument is mistaken.

Supplemental jurisdiction under section 1367(a) is not established simply because the federal and state claims arise from the same subjective motivations of the defendant;[2] the claims must stem from the same common nucleus of facts. As compared to the federal claims, Grail's state law claims in Counts IV, V, and VI do not. They will require the presentation of different facts, evidence, and witnesses. Thus, the Court does not have supplemental jurisdiction over them. *See, e.g.*, *Kinsey v. King*, 257 F. App'x 136, 139 (11th Cir. 2007) (affirming dismissal of state law claims that did not share common nucleus of fact with federal claims); *Delgado v. De Ona*, 2012 WL 1792630, at *2 (S.D. Fla. May 15, 2012) (Simonton, J.) (no supplemental

---

[2] If that were the test, supplemental jurisdiction would be virtually boundless. It would lie as to all claims stemming from a defendant's commonly motivated bad acts against the plaintiff, no matter how disconnected the facts and events. Such a rule would see federal court jurisdiction extended well beyond that conferred by section 1367(a).

jurisdiction over state law claims that "involve different factual predicates, will require the presentation of different types of evidence at trial, and will involve testimony from different witnesses"); *Southern-Owners Ins. Co. v. Hayden*, 2009 WL 3818379, at *5 (S.D. Fla. Nov. 13, 2009) (Martinez, J.) (same).

The state law claims in Counts IV, V, and VI will be dismissed. They may be brought, if at all, in an appropriate state court forum.[3] *Cf. Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (when state law claims are so disconnected from the federal claims supporting jurisdiction, "[s]tate courts, not federal courts, should be the final arbiters of state law.")

## Conclusion

For the reasons explained herein, it is hereby **ORDERED and ADJUDGED** that Stern's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 20] is **GRANTED IN PART** and **DENIED IN PART**. Stern's request to dismiss for lack of personal jurisdiction is **DENIED**; his request to dismiss Count III for lack of supplemental jurisdiction is also **DENIED**. Stern's request to dismiss Counts IV, V, VI for lack of supplemental jurisdiction is **GRANTED**, however. The pendent state law claims set forth in Counts IV, V, and VI are hereby **DISMISSED**. Also, Stern's Motion to Strike the Declaration of Brad A. Woods is **DENIED AS MOOT**. The Court did not rely upon Woods's declaration in reaching a decision as to personal jurisdiction.

**DONE and ORDERED** in chambers, at Miami, Florida, on November 26, 2012.

_____
**ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE**

*Copies to:* Counsel of Record

---

[3] Grail's reliance upon the decision in *McCalla v. Avmed, Inc.*, 2011 WL 6780872, at *2 (S.D. Fla. Mar. 7, 2011) (Cohn, J.), is misplaced. There, the Court considered whether to exercise its ***discretion*** to decline jurisdiction under section 1367(c), not whether it had jurisdiction under section 1367(a). As to section 1367(a), the Court has no discretion to exercise jurisdiction once it determines that the claims do not arise from the same nucleus of operative facts. It is simply without subject matter jurisdiction and powerless to do anything but dismiss the pendent claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("when [subject matter jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).