## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-60976-Civ-SCOLA

GRAIL SEMICONDUCTOR, INC.,

      Plaintiff,

vs.

ROBERT B. STERN,

      Defendant.

_____/

### ORDER GRANTING MOTION TO TRANSFER VENUE

THIS MATTER is before the Court upon the Motion to Transfer [ECF No. 68], filed by Defendant Robert B. Stern ("Stern"). Stern seeks a transfer of this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons explained below, the Court finds that the case should be transferred.

### Introduction

This lawsuit arises from Stern's attempts to transfer or sell restricted stock shares in Grail Semiconductor, Inc. ("Grail") to third-parties. Grail filed suit here, in the United States District Court for the Southern District of Florida, alleging that Stern's attempted sales and/or transfers violated the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* The Complaint also raises pendent state law claims, some which the Court previously dismissed under 28 U.S.C. § 1367(a). The remaining state law claims are for violation of state securities laws and for breach of fiduciary duty.

According to the Complaint, there were 44 unlawful transactions, or attempted transactions, involving the transfer of restricted stock shares to "persons located in Florida, California and New York, as well as persons in both Canada and Israel." Compl. ¶ 17. As to Florida, there was just a single transaction in which Stern allegedly gifted 4,500 shares to a South Florida resident named Howard Moskow. The remaining 10 million shares at issue involved transactions outside of, and unrelated to, Florida. Thus, the one transaction relating to a Florida resident comprised less than one-tenth of one percent of the shares at issue.

Stern, Grail's former CEO, is a California citizen who resides in the Los Angeles area. Grail is a California corporation founded in 2000. Since 2010, Grail has kept its principal place of business in Naples, Florida, but apparently did not apply to conduct business in Florida until just days before this lawsuit was filed. Stern has limited contacts with Florida. In fact, he has never lived in the State, nor owned property here. He also has never been employed in Florida.

Given his limited contacts with Florida, Stern previously sought dismissal for lack of personal jurisdiction. This Court denied that motion, finding sufficient minimum contacts to support personal jurisdiction. Stern has now moved to transfer venue, arguing that this case more properly belongs in federal district court in California.

### Legal Standard

"A motion to transfer venue is governed by 28 U.S.C. § 1404(a)." *Trafalgar Cap. Spec. Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1281 (S.D. Fla. 2012) (Altonaga, J.). Under section 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" to further "the convenience of parties and witnesses" and to serve "the interest of justice." Transfer of venue "den[ies] audience to a case on the merits" based on "a determination that the merits should be adjudicated elsewhere." *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). The district court has broad discretion to decide venue motions based on an individualized, case-specific assessment of convenience and fairness. *See Wi-Lan USA v. Alcatel-Lucent USA*, 2013 WL 358385, at *2 (S.D. Fla. Jan. 29, 2013) (Altonaga, J.); *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Transfer of venue is proper only where the movant shows there is an adequate alternative forum in which suit could have been brought and various private and public considerations weigh in favor of transfer to that alternative forum. *See Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1300-01 (S.D. Fla. 2002) (Gold, J.). If an alternative forum exists, the district court should consider and weigh the following factors in deciding whether to transfer: 1) the plaintiff's initial choice of forum; 2) the locus of operative facts; 3) the general convenience to the parties of litigating in one forum or another; 4) the convenience to the witnesses; 5) the relative ease of access to documents and discovery; 6) the financial impacts on the parties of litigating in one forum versus another; 7) the familiarity with governing law by the judges in the respective forums; 8) each forum's interest in adjudicating the dispute; and 9) the relative congestion of cases in the competing forums. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *Hartman*, 878 F. Supp. 2d at 1281.

## Legal Analysis

Upon consideration of the relevant factors, the Court concludes that this action should be transferred to the United States District Court for the Central District of California.

"The threshold question is whether this civil case may have been brought in the desired district of transfer," the Central District of California. *See Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999).  The Court answers that question in the affirmative because both subject matter jurisdiction and personal jurisdiction are satisfied in that forum and a substantial portion of the events giving rise to the Complaint occurred there. *See Hartman*, 878 F. Supp. 2d at 1285.  Indeed, Grail is a California corporation, Stern is a California citizen residing in that district, and subject matter jurisdiction is founded on 28 U.S.C. § 1331, as the Complaint seeks relief for violations of the federal securities laws. *See Social Language Processing, Inc. v. Ott*, 2013 WL 1442168, at *3 (S.D. Fla. Apr. 9, 2013) (Cohn, J.); *Am. Aircraft Sales Int'l*, 55 F. Supp. 2d at 1351.  It is also important to note that Grail seeks relief for Stern's allegedly unlawful stock transfers from California to individuals there and elsewhere. *See Hartman*, 878 F. Supp. 2d at 1285.  Thus, an adequate alternative forum exists in the Central District of California; and because it does, the only remaining question is whether the relevant considerations, on balance, weigh in favor of transfer to that forum.  As discussed below, the Court finds that they do.

The first factor calls for consideration of Grail's choice of forum.  Generally, the plaintiff's choice of forum is entitled to substantial deference and should not be disturbed unless clearly outweighed by countervailing factors. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).  "But where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Cellularvision Tech. & Telecommc'ns, L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (Moore, J.).  Grail is a California corporation with its principal place of business in Naples, Florida.  As such, Grail's home forum is the Middle District of Florida.[1]  Grail did not file suit there, however.  Instead, it admittedly forum shopped for what it perceived to be a less busy district, ultimately settling upon the Southern District of Florida.  Thus, the Court finds that Grail's choice of forum is not entitled to a great deal of weight here.

---

[1] An argument could be made that the Central District of California might also be regarded as Grail's home forum.  Grail is a California corporation founded in California by Stern, a Los Angeles resident.  Also, Grail's agent for service of process in California continues to be located in Los Angeles.

The next consideration is the locus of operative facts in the case.  As courts have repeatedly recognized, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *See Windmere Corp. v. Remington Prods., Inc*., 617 F. Supp. 8, 10 (S.D. Fla. 1985) (Nesbitt, J.); *see also Wi-Lan USA v. Alcatel-Lucent USA*, 2013 WL 358385, at *2. Here, the operative facts set out in the Complaint have little connection to the Southern District of Florida.  Stern made the allegedly improper stock transfers from California to individuals there and elsewhere, with only one transfer made to a person in Florida.  By contrast, the majority of the transfers – 16 out of 44 – were made to persons in California.  While Grail's principal place of business is now in Florida, that has little relevance given that the acts sued upon happened in California.  Thus, the operative facts did not occur in the Southern District of Florida; California, and particularly the Central District of California, has much stronger ties to the events sued upon.  *See Credit Bureau Servs., Inc. v. Experian Info. Solutions, Inc*., 2012 WL 6102068, at *23-*24 (S.D. Fla. Dec. 7, 2012) (Rosenbaum, J.).  The Court therefore finds that this factor supports transfer.

The next factor concerns convenience to the parties of litigating in one forum or the other.  While the transfer device generally should not be used merely to shift the inconvenience from one party to the other, *see Mason v. Smithkline Beecham Clinical Labs*.,  146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) (Moore, J.), the convenience to the defendant, as an involuntary party to the litigation, cannot be wholly disregarded, *see Summers-Wood L.P. v. Wolf*, 2008 WL 2229529, at *3 (N.D. Fla. May 23, 2008).  Obviously, Grail would rather be within a short drive of its headquarters in Naples, Florida, while Stern would rather be defending on his home turf in California.  But Grail is a California corporation suing a California resident.  In addition, Grail is involved in other ongoing actions in California courts, which suggests that Grail will not be greatly inconvenienced if required to litigate there in this case.  *See Loveland v. State Farm Fire & Cas. Co.*, 2013 WL 1836450, at *3 (S.D. Fla. May 1, 2013) (Huck, J.).  Although Grail complains that it would work a hardship if it is forced to secure new California counsel schooled in securities laws, this argument fails to persuade because Grail's current counsel may seek admission *pro hac vice* in the Central District of California.[2]  *See Sessions v. Atl. Recording Corp.*, 2011 WL 3754601, at *4 (M.D. Fla. Aug. 11, 2011) (transfer would not necessarily

---

[2]  The Court also notes that convenience of counsel is generally not a relevant factor in deciding whether to transfer.  *See Cellularvision Tech. & Telecommc'ns, L.P. v. Alltel Corp*., 508 F. Supp. 2d 1186, 1190 (S.D. Fla. 2007) (Moore, J.).   Indeed, at least one court of appeals has held it is an abuse of discretion, and reversible error, to consider location of counsel in deciding whether to transfer venue.  *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).

require plaintiff to obtain new representation because "counsel may, in appropriate circumstances, be admitted to practice *pro hac vice*" in alternate forum); *see also Ramsey v. Fox News Net., LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (fact that "a transfer of this case may require the Plaintiffs to secure local counsel in a different forum" did not weigh against transfer). Grail would only need to secure competent local counsel, something that should prove neither severely onerous nor expensive. On the whole, then, the Court finds this factor to be mostly neutral.

The next factor is convenience to the witnesses and the ability to compel their attendance at trial. Stern argues that the Central District of California would be more convenient for witnesses because "California has the most residents involving over 80% of the alleged share transfers." Mot. at 5. He also contends that other defense witnesses reside in California. Grail counters that Stern offers no specifics as to who will testify and why their testimony is needed. According to Grail, the claims in this case "all revolve principally around [Stern's] own conduct and are dependent upon his testimony and the testimony of corporate officers and representatives." Resp. at 6. Regardless of whether the recipients of stock are called as witnesses, the Court finds that California is the most convenient forum. To the extent that they are called, the 16 California residents who received 80% of the alleged stock transfers will be close to home if this case is transferred. Although some of the California stock recipients may reside outside of the Central District of California's subpoena power (no party provides information on this point), it will undoubtedly be more convenient for them to serve as witnesses in California versus Florida. On the other hand, if the stock recipients are not made witnesses, then Stern will likely be the most important witness and it will obviously be far more convenient for him to testify from home. Grail identifies no other corporate officers that may be called as witnesses, so the Court does not consider which forum might be more convenient for such persons. All things considered, the Court finds that this factor supports transfer.

The next consideration is ease of access to documents, discovery, and other sources of proof. Stern contends that the Central District of California is better because that's where many of the witnesses are located and, thus, also where the majority of key documents will be found. This argument is conclusory and devoid of specifics, but Grail does not even discuss this factor in its response memorandum. Regardless, this factor adds little to the decisional calculus in light of modern conveniences. To the extent that Stern is the main witness, his documents are presumably in California. By contrast, Grail's documents are likely to be housed at its principal

place of business in Florida.  The stock recipients may have relevant documents and sources of proof, and several of them are located in California.  However, "[i]n a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is [practically] irrelevant."  *See Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012) (Moore, J.); *see also Proven Winners N. Am., LLC v. Cascade Greenhouse*, 2007 WL 1655387, at *3 (M.D. Fla. June 6, 2007) ("documents are manifestly portable and can easily be transferred to any venue").  Under such circumstances, "this Court considers the location of relevant documents and the relative ease of access to sources of proof [to be] a non-factor."  *See Microsprhix LLC*, 2012 WL 243764, at *3.

The next factor is the financial impacts on the parties of litigating in one forum versus the other.  Stern claims to be without the financial resources to litigate in Florida.  Previously, the Court granted permission for Stern's Florida (and only) counsel to withdraw.  Stern is proceeding *pro se* and avers to being without sufficient funds to pay his living expenses, much less legal and travel costs associated with this litigation.  Stern Decl. ¶¶ 6, 7.  Grail complains that transfer to California will work a hardship on it because finding and hiring new counsel familiar with securities laws will prove overly expensive.  As noted above, however, all Grail needs to do is find competent local counsel and then have its current Florida lawyers seek admission *pro hac vice* in the Central District of California.  The idea that transfer will require it to start over and find completely new counsel is mistaken, unpersuasive, and not a factor in this Court's analysis.  *See Cellularvision Tech.*, 508 F. Supp. 2d at 1190.  While Grail also contends that it "has needed to resort to credit lines to finance the various legal proceedings in which the company is involved," *see* Hofer Decl. ¶ 8, it brought this lawsuit and, thus, will presumably have to resort to such credit lines regardless of the forum.  Under such circumstances, the Court finds that this factor weighs slightly in favor of transfer.

The next consideration is the familiarity with governing law by the judges in the respective forums.  Grail has raised federal and state securities law claims, as well as a common law breach of fiduciary duty claim.  Obviously, this Court and the district court in California are equally situated to apply the federal securities laws.  *See Aalberg v. Plan 4 College, Inc.*, 2009 WL 3698039, at *4 (M.D. Fla. Nov. 4, 2009).  As to the state securities laws claim and the claim for breach of fiduciary duty, identifying the forum with the best situated judge depends on whether Florida, California, or some other state's law applies.  "When choosing which state's

applicable substantive law will govern in pendent or supplemental state law claims, a federal district court will apply the choice of law rules of the state in which it sits," *i.e.*, Florida in this case.[3]  *Court-Appointed Receiver of Lancer Mgmt. Group LLC v. Lauer*, 2008 WL 906274, at *4 (S.D. Fla. Mar. 31, 2008).   Florida law requires application of the law of the state of incorporation where legal disputes concern the "internal affairs" of a corporation.  *See* Fla. Stat. § 607.1505 ("This [business corporations] act does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."); *see also Banco Industrial De Venezuela C.A., Miami Agency v. De Saad*, 68 So. 3d 895, 898 (Fla. 2011).   Claims involving or implicating the relationship among and between a corporation and its officers, directors, or shareholders are subject to the "internal affairs" doctrine.  *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"); *see also* Restatement (Second) of Conflict of Laws § 302 (1971).   In addition, the issuance or redemption of stock qualifies as an "internal affair" of the corporation and, as such, claims relating thereto must be decided by reference to the incorporating state's law.  *See In re PHP Healthcare Corp.*, 128 F. App'x 839, 844 (3rd Cir. 2005) (collecting "internal affairs" cases that involved stock redemption claims against the corporation); *see also Black v. USA Travel Auth., Inc.*, 2001 WL 761070, at *4 (S.D.N.Y. 2001); *Rogers v. Guar. Trust Co. of N.Y.*, 288 U.S. 123, 129-30 (1933); *Mariasch v. Gillette Co.*, 521 F.3d 68, 72 (1st Cir. 2008).   Accordingly, the Court finds that California law will likely apply to Grail's state securities laws claim.[4]

---

[3] Following a transfer of venue under section 1404(a), the transferee court must follow the choice-of-law rules that prevailed in the transferor court.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  In *Van Dusen*, the Supreme Court reasoned that a party should not "get a change of law as a bonus for a change of venue," because the venue statute is designed to facilitate "a change of courtrooms" only.  *See id.* at 636 (citation omitted).   Therefore, if this case is transferred, the California district court will have to apply Florida's choice of law rules, just as this Court does here.  *See Hiram Walker & Sons, Inc. v. Kirk Line*, 877 F.2d 1508, 1512 (11th Cir. 1989*); Shannon–Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir.2001).

[4] The Court also observes that the allegations of the Complaint seem to contemplate application of California's securities laws.  The only state securities laws mentioned in the Complaint are California's securities laws.  *See, e.g.*, Compl. ¶ 14 ("Defendant's shares of Grail common stock have never been registered under Section 5 of the Securities Act of 1933, 28 U.S.C. § 77e, or the California Corporate Securities Law of 1968, and, therefore, are considered to be 'restricted securities.'").

The Court also finds that California law will likely apply to Grail's common law breach of fiduciary duty claim.  The Eleventh Circuit has held that "[t]he fiduciary duties owed to a corporation by its officers and directors concern the internal affairs of a corporation." *See Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010); *see also Intarome Fragrance & Flavor Corp. v. Zarkades*, 2009 WL 931036, at *13 (D.N.J. Mar. 30, 2009).  As such, claims for breach of fiduciary duty are generally governed by the law of the state of incorporation.  *See Mukamal*, 378 F. App'x at 897.

Given that California law will likely apply to the pendant state law claims in this case, this factor weighs in favor of transfer.  A California federal judge will be better situated to apply California law as compared to this Florida federal jurist.  *See Munich Re Underwriting Ltd. v. Markel Ins. Co.*, 2012 WL 5464516, at *2 (S.D. Fla. Nov. 8, 2012) (Seitz, J.) (although "this Court is capable of applying California law, a California court is clearly more familiar with California law than this Court"); *see also Conseal Int'l Inc. v. Econalytic Sys., Inc.*, 2009 WL 1285865, at *4 (S.D. Fla. May 8, 2009) (Altonaga, J.) (district judge in alternate forum more familiar with that forum's state laws).

The next factor is each forum's interest in adjudicating the dispute.  Florida has little interest in this case as compared to California.  Only one stock recipient resides in Florida.  And while Grail has its principal place of business in Naples, Florida, Grail is incorporated in California.  The state of incorporation is significant because, as just discussed, issues pertaining to corporate "internal affairs" implicate the state of incorporation's laws.  Consequently, the state of incorporation has a strong interest in regulating potentially illicit stock transfers such as the ones at issue in this case.  *See Cellularvision Tech.*, 508 F. Supp. 2d at 1189 ("Citizens in the Southern District of Florida have little interest in disputes between foreign businesses and normally should not be burdened by the litigation.").  In addition, it is worth noting that Grail did not file a certificate of authority to do business in Florida until just a few days before filing this lawsuit.  Florida law says that foreign corporations may not do business here (and, by extension, obtain the benefits of its laws) unless they are properly registered.  At the times material to the events in the Complaint, Grail was not.  Moreover, Stern is a California resident who made the allegedly illicit stock transfers from California.  Thus, as between the two states, it is plain that California, not Florida, has a greater interest in the adjudication of this lawsuit.

Finally, the Court considers the relative congestion of cases in the competing forums. "Although docket congestion, if proven, may be an appropriate consideration in a § 1404(a) motion to transfer [analysis], case law does not suggest that docket congestion is, by itself, a dispositive factor."  *See P & S Bus. Mach., Inc. v. Canon U.S.A., Inc.*, 331 F.3d 804, 808 (11th Cir. 2003).  Grail argues that case statistics weigh against transfer because the Southern District of Florida has a lower per judge caseload than does the Central District of California. Grail apparently chose to forum shop in search of what it perceived to be a less busy forum. Nevertheless, "whether one court would move any given case to trial faster is 'speculative,' because 'case-disposition statistics may not always tell the whole story.'"  *See R & R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 784397, at *11 (M.D. Fla. Mar. 1, 2013) (citations omitted).  That is absolutely true where, as here, the assigned district judge is newly-appointed and, as such, still digesting a heavy load of complex criminal and civil cases given to him when he ascended the bench a little more than a year ago.  Moreover, "[a]ll courts are busy," *see U.S. ex rel. Urquilla-Diaz v. Kaplan Univ.*, 2009 WL 763747, at *2 (M.D. Fla. Mar. 23, 2009), and "the Southern District of Florida has one of the busiest dockets in the country," *see Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1378 (S.D. Fla. 2003) (Simonton, J.). Given that both the Southern District of Florida and the Central District of California are busy judicial districts, the Court finds that this factor is neutral at best.

## Conclusion

As discussed above, all of the relevant factors either support transfer of this case to the Central District of California or are neutral.  No factor weighs against transfer.  Accordingly, it is hereby **ORDERED and ADJUDGED** that Stern's Motion to Transfer [ECF No. 68] is **GRANTED**.  This action shall be transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).   The Clerk shall take all necessary steps to effectuate the transfer of this action.  The pending Motions for Extension of Pretrial Deadlines [ECF Nos. 89, 91] are **DENIED** without prejudice, to be renewed upon transfer.  The pending Motions to Intervene [ECF Nos. 37, 46, 49, 52, 55, 82] must be left for the transferee judge.

**DONE and ORDERED** in chambers, at Miami, Florida, on May 21, 2013.

ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**